IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

UNITED STATES OF AMERICA )
                                          )
        v.                           )         CR 118-005
                                            )
CHARLIE EDWARD MOBLEY, JR.     )

_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

The indictment charges Defendant Charlie Edward Mobley, Jr., with one count of conspiracy to possess with intent to distribute controlled substances, one count of possession with intent to distribute marijuana, and one count of possession of firearms in furtherance of a drug trafficking offense. (Doc. no. 1.) Defendant moves to suppress evidence obtained from his home at 1928 Virginia Avenue in Augusta, Georgia. (Doc. no. 34.) Upon consideration of the briefs and hearing testimony on April 25, 2018, the Court **REPORTS** and **RECOMMENDS** Defendant's Motions to Suppress be **DENIED**.

I.      **FACTS**

In January 2017, Investigator Brad Capitosti of the Richmond County Sheriff's Office, assigned at the time to the Drug Enforcement Agency's task force, began investigating Defendant for possession of narcotics and firearms at his residence, 1928 Virginia Avenue, based on information from a confidential informant ("CI"). (Court's recording system, *For The Record*, (hereinafter "FTR"), 10:05:08 – 10:06:25.) Investigator Capitosti first encountered the CI seventeen months prior, and the CI had participated in several state and federal narcotics and firearm investigations leading to over ten prosecutions

for drug and firearm related crimes. (FTR 10:06:43 – 10:08:06.) The CI told Investigator Capitosti he had known Defendant for approximately two years, and he had personal knowledge Defendant kept large clear trash bags of marijuana, other narcotics, and firearms inside his residence. (FTR 10:08:49 – 10:09:09; 10:10:37 – 10:10:56.)

Based on the CI's information, Investigator Capitosti and his colleagues began to conduct surveillance at Defendant's residence throughout the month of January, where they observed many cars coming and going for brief periods of time, which was consistent with drug trafficking. (FTR 10:11:13 – 10:11:52; 10:13:01 – 10:13:14.) Investigator Capitosti also ran Defendant's criminal history and discovered he was a convicted felon for the sale of cocaine in Burke County, Georgia in 2007. (FTR 10:12:07 – 10:12:30.)

Investigator Capitosti sought a search warrant for Defendant's residence from Superior Court Judge Susan Jolly on February 16, 2017, alleging in support the following:

> Within the past forty eight (48) hours this Affiant has been in contact with a confidential source and reliable Source (*hereafter referred to as C/S.)*in reference to the drug activities involving MOBLEY, Charley.
> The C/S bas been familiar with the illegal drug activities of MOBLEY, Charley for approximately two (2) years. The C/S stated that he/she has seen MOBLEY, Charley in possession of firearms at the residence of 1928 Virginia Avenue and on his person, along with amounts of marijuana. The C/S stated that MOBLEY, Charley keeps illegal firearms inside the residence of the target location of 1928 Virginia Avenue and sells amounts of marijuana and other illegal narcotics.
> The C/S has been known to this affiant for approximately seventeen (17) months and has since provided truthful and knowledgeable information which has led to the seizure of large amounts of illegal narcotics and drug traffickers.
> During a records check of MOBLEY, Charley, Inv. Capitosti discovered that MOBLEY, Charley was convicted on April 13, 2007 for V.G.C.S.A sale of Cocaine. Inv. Capitosti also discovered that MOBLEY, Charley was convicted of other drug related offenses as well other previous firearms and assault charges through the Burke County Sheriff's Office.

This Affiant has observed Mobley, Charley arriving and leaving the listed residence. The affiant has also observed vehicles arriving at the residence and staying for short periods of time after entering inside the target residence. Due to the information received by the C/S and the activities observed at the residence, this Affiant believes that narcotics and firearms are being kept and stored at the residence of 1928 Virginia Avenue and request [sic] a warrant be issued for the residence.

(Doc. no. 34-2, pp. 3-4; FTR 10:13:20 – 10:13:25.)

Judge Jolly issued the requested warrant at 3:50 p.m. on February 2, 2017, and Investigator Capitosti's team executed the search at 8:15 p.m. (Id. at 5; FTR 10:17:21 – 10:17:38.) The search warrant return described items seized from the residence as three firearms along with ammunition, numerous drugs (including marijuana) in various forms, drug paraphernalia, and currency. (Doc. no. 34-1, p. 53.)

When Investigator Capitosti informed the CI of the drugs and guns seized from the residence, the CI informed Investigator Capitosti Defendant had previously buried firearms and currency in his backyard. (FTR 10:19:13 – 10:19:26, 10:48:26 – 10:49:36.) Investigator Capitosti obtained a second search warrant, but his search for buried items in the backyard yielded no results. (Doc. nos. 34-4, 34-5, 34-1, p. 61.)

## II.   DISCUSSION

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, a search warrant must: (1) be based on probable cause; (2) be supported by a sworn affidavit; (3) particularly describe the place to be

searched; and (4) particularly describe the items to be seized.  See id.; United States v. Carson, 520 F. App'x 874, 888 (11th Cir. 2013).

A.     **The Standard for Evaluating Probable Cause**

In deciding whether to sign a search warrant, the issuing judge must make a "practical, common sense decision" whether, given all the information in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]"  United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (quoting Gates, 462 U.S. at 232).  The validity of the warrant is evaluated based on the totality of the circumstances.  See id.; see also United States v. Flowers, 531 F. App'x 975, 981 (11th Cir. 2013) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.").

Moreover, concerning use of a CI to establish probable cause, the CI's veracity and basis of knowledge are relevant considerations, though not independent essential elements, in assessing whether probable cause exists to support a search warrant.  Gates, 462 U.S. at 233 ("[T]hey are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations:  a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.").  Similarly, independent corroboration of a CI's information is not an essential requirement, but instead a relevant consideration in the

Court's probable cause analysis. Brundidge, 170 F.3d at 1353 ("[I]ndependent police corroboration has never been treated as a requirement in each and every case."); see also United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) ("[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").

In the Eleventh Circuit, a court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination. United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011) (citing Brundidge, 170 F.3d at 1352). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).

### B. Investigator Capitosti's Affidavit Established Probable Cause.

Upon examination of the totality of the circumstances, the Court concludes the Affidavit and Application for a Search Warrant provided a substantial basis for Judge Jolly's finding of probable cause that Defendant kept narcotics and firearms at his residence.

Defendant argues Investigator Capitosti did not include sufficient information in his affidavit to allow Judge Jolly to determine the reliability of the CI. Investigator Capitosti explained by affidavit that he had known the CI for seventeen months and the CI had provided "truthful and knowledgeable information" leading to "the seizure of large amounts of illegal narcotics and drug traffickers." (Doc. no. 34-2, p. 4.) This information is sufficient, by itself, to establish the CI's credibility and trustworthiness. Investigator

Capitosti also stated the CI had been familiar with Defendant's illegal drug activities for approximately two years and has seen firearms and narcotics in Defendant's home. (Id.)

Defendant argues, based on the Georgia Court of Appeals' decision in Caswell v. State, 466 S.E.2d 907 (Ga. App. 1996), that Investigator Capitosti failed to establish the CI's personal knowledge, such that the CI's information was merely a casual rumor with no substantial basis. Investigator Capitosti does not merely state the CI was "familiar" with Defendant for two years, but also states the CI had "seen [Defendant] in possession of firearms at the residence of 1928 Virginia Avenue and on his person, along with amounts of marijuana." (Doc. no. 34-2, p. 4.) Thus, the CI's information regarding the firearms and marijuana was clearly from personal knowledge, not mere rumor.

Moreover, the affidavit explained how Investigator Capitosti conducted surveillance in which he "observed vehicles arriving at the residence and staying for short periods of time after entering inside the target residence." (Id.) As Investigator Capitosti explained in the affidavit, these activities corroborated the CI's tip of illegal narcotics activity at the house. (Id.); see United States v. Powell, 222 F.3d 913, 915-18 (11th Cir. 2000) (finding repeated, short visits and swift departures from residence indicative of drug activity); United States v. Foree, 43 F.3d 1572, 1575-76 (11th Cir. 1995) (recognizing independent confirmation of substance of CI report can compensate for limited information in affidavit about CI's veracity and basis of knowledge); see also United States v. Martin, 615 F.2d 318, 324-25 (5th Cir. 1980)[1] (acknowledging "several judicially-recognized methods of establishing the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed

credibility of an informant and the reliability of his information," including independent corroboration). This information is properly considered together as part of the overall evaluation of probable cause. See Gates, 462 U.S. at 233; Martin, 297 F.3d at 1314; Brundidge, 170 F.3d at 1352.

Defendant contends Investigator Capitosti's failure to identify the CI as a paid informant undermines the reliability of the CI and Judge Jolly's finding of probable cause, citing the Georgia Court of Appeals' decision in Lyons v. State, 572 S.E.2d 632 (Ga. App. 2002). (Doc. no. 34, p. 10; doc. no. 46, p. 4.) The omission is not fatal. As one Court within the Eleventh Circuit has recognized, "'It would have to be a very naïve magistrate who would suppose that a confidential informant would drop in off the street with . . . evidence and not have an ulterior motive. The magistrate would naturally have assumed that the informant was not a disinterested citizen.'" United States v. Taylor, No. CR 14-0303-CG, 2015 WL 5923580, at *3 (S.D. Ala. Oct. 12, 2015) (quoting United States v. Strifler, 851 F.2d 1197, 1201 (9th Cir. 1988)); see United States v. Shirley, No. 1:10-CR-167-JEC/AJB, 2011 WL 3704940, at *16 (N.D. Ga. July 7, 2011), report and recommendation adopted, No. 1:10-CR-167-JEC, 2011 WL 3687577 (N.D. Ga. Aug. 22, 2011) ("[C]ourts have held that a warrant does not violate Franks when the affidavit used to procure the warrant omitted the fact that an informant was paid for his cooperation.") (citations omitted); see also United States v. Ofshe, 817 F.2d 1508, 1513 (11th Cir. 1987) (holding omission of CI's criminal convictions and incarceration did not invalidate search warrant); United States v. Haimowitz, 706 F.2d 1549, 1555 (11th Cir. 1983) (holding omission of prior felonies and bad acts did

down prior to October 1, 1981.

not destroy probable cause). Therefore, probable cause exists even though Investigator Capitosti failed to include the CI was a paid informant in his affidavit. See Shirley, 2011 WL 3704940, at *16 ("Therefore, even if the issuing judge had been told that CS# 2 was paid after securing cocaine from [Defendant], probable cause still existed.").

Defendant also contends the warrant relies on stale information because there is no indication when the CI observed Defendant with drugs and firearms. (Doc. no. 34, pp. 7-8; doc. no. 46, pp. 3-5.) Warrant applications must be based on timely information, and warrant applications based on stale information lack probable cause because they fail to show similar or other improper conduct is continuing. United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994), modified on other grounds by United States v. Toler, 144 F.3d 1423 (11th Cir. 1998). However, the staleness determination must be made on a case-by-case basis, in which a court "may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id. (citations omitted).

The affidavit clearly states Investigator Capitosti relied on fresh information just received from the CI within forty-eight hours of the application. In addition, the affidavit contained independent, corroborating information from Investigator Capitosti's surveillance indicating Defendant's drug offenses were ongoing at the time the warrant was issued. (Doc. no. 34-2, p. 4); see United States v. Galloway, 579 F. App'x 871, 874 (11th Cir. 2014) ("Stale information does not void an affidavit when the government's affidavit updates, substantiates, or corroborates the stale information.") (citing Harris, 20 F.3d at 450). Therefore, the warrant is not undermined by stale information.

Finally, Defendant argues the CI is unreliable because there were no drugs or firearms buried in Defendant's backyard when Investigator Capitosti executed his second search. (Doc. no. 34, pp. 10-11.)  The CI's information used to secure the second search warrant has no bearing on whether Investigator Capitosti established probable cause in support of the first search warrant.  And were the Court inclined to consider events occurring after the first search to determine the CI's reliability, it would find the CI credible since the first search resulted in seizure of the drugs and firearms described by the CI.

In sum, Investigator Capitosti's Affidavit and Application for a Search Warrant provided a substantial basis for Judge Jolly's determination of a fair probability that evidence of firearms and drug trafficking would be found at Defendant's residence.  The information provided to Judge Jolly is sufficient to satisfy the Fourth Amendment's requirement of probable cause.

C.    **Even If Probable Cause Did Not Exist to Support Issuance of the Warrant, the <u>Leon</u> Good Faith Exception Applies.**

Even if the Court were to conclude probable cause did not support the warrant, an untenable position in light of all the information discussed above, the good faith exception to the exclusionary rule applies under <u>United States v. Leon</u>, 468 U.S. 897 (1984).

The judicially created remedy known as the exclusionary rule acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search.  <u>Martin</u>, 297 F.3d at 1312.  However, under <u>Leon</u>, the good faith exception allows the introduction of evidence in the prosecution's case in chief that is "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate."  <u>Leon</u>,

468 U.S. at 913. The Leon Court explained that the good faith exception to the exclusionary rule was appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. Thus, under Leon, the question becomes whether the officers executing the warrant reasonably relied on the issuing Magistrate Judge's determination of probable cause. See id. at 913; see also United States v. Herring, 492 F.3d 1212, 1215 (11th Cir. 2007) ("[T]he exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant which is later found not to be supported by probable cause.").

Under Leon, there are four scenarios under which the good faith exception to the exclusionary rule would not apply. The exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Leon, 468 U.S. at 923. Nor does the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role such that no reasonably well trained officer would rely on the warrant. Id. The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid. Id.

Here, Defendant argues Investigator Capitosti recklessly disregarded the truth and the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. (Doc. no. 46, pp. 7-9.) However, there is no evidence false information was provided or that Investigator Capitosti recklessly disregarded the truth in

10

relying on the CI.  Nor is there evidence Judge Jolly "wholly abandoned" a detached and neutral role in issuing the warrant.  As discussed above, the warrant application provided sufficient information establishing probable cause.  And the warrant is not so facially deficient in any respect, and especially with regard to the issue of probable cause, that the executing officers could not reasonably presume it to be valid.

In sum, the Court concludes that even if probable cause to support the issuance of the warrant had not been established, a position discredited above, see supra Part II.B, the evidence discovered as a result of the execution of the contested search warrant would be admissible under the good faith exception to the exclusionary rule set forth in Leon.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**.  (Doc. no. 34.)

SO REPORTED and RECOMMENDED this 23rd day of May, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

11